**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Magsig v. Toledo*, Slip Opinion No. 2020-Ohio-3416.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3416

THE STATE EX REL. MAGSIG *v.* THE CITY OF TOLEDO.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Magsig v. Toledo*, Slip Opinion No. 2020-Ohio-3416.]**

*Civil law—R.C. 1901.20(A)(1) expressly vests exclusive jurisdiction over noncriminal traffic-law adjudications in the municipal courts—A city does not have jurisdiction to conduct its own quasi-judicial proceedings to adjudicate a person's liability for violating a municipal traffic ordinance— Writ granted.*

(No. 2019-1526—Submitted March 3, 2020—Decided June 24, 2020.)

IN PROHIBITION.

_____

**FRENCH, J.**

{¶ 1} In this original action, relator, Susan Magsig, seeks a writ of prohibition to prevent respondent, the city of Toledo, from conducting an administrative hearing to adjudicate her liability for violating a municipal traffic

ordinance. On November 15, 2019, we granted an alternative writ. 157 Ohio St.3d 1489, 2019-Ohio-4696, 134 N.E.3d 1199. We now grant a writ of prohibition.

## I. Background

{¶ 2} Toledo has a civil-enforcement system for red-light and speeding-camera violations. Toledo Municipal Code ("TMC") 313.12(a)(1). Under that system, the owner (or, in some cases, the operator) of a vehicle is liable for a penalty of $120 for operating a vehicle in excess of the designated speed limit. TMC 313.12(c)(2) and (d)(2). The offense is "deemed a noncriminal violation for which a civil penalty" is imposed, and the penalty does not include the imposition of points toward a license suspension. TMC 313.12(d)(2).

{¶ 3} Toledo cites such violations by sending the vehicle owner a citation called a "Notice of Liability." TMC 313.12(a)(3). The owner has 21 days from the date on the notice in which to file an appeal with a hearing officer. TMC 313.12(d)(4). Appeals are conducted through an administrative process established by the municipal police department. *Id*. "The failure to give notice of appeal or pay the civil penalty within [the 21-day] time period shall constitute a waiver of the right to contest the citation," *id*., will be "considered an admission" of liability, *id*., and will result in the imposition of an additional $25 penalty, TMC 313.12(d)(5).

{¶ 4} On August 19, 2019, Toledo's automated system generated a notice of liability for a speeding offense allegedly committed by Magsig.[1] The notice informed Magsig that she had until October 11 to respond. Magsig requested a hearing before the city's administrative-hearing officer, which the city scheduled for November 19.

{¶ 5} On November 4, however, Magsig commenced the present action for a writ of prohibition to prevent Toledo from conducting the administrative hearing on the grounds that R.C. 1901.20(A)(1), as amended by 2019 Am.Sub.H.B. No. 62

---

1. The parties have stipulated to the authenticity of the exhibits attached to the complaint.

2

("H.B. 62") (effective July 3, 2019), vests exclusive jurisdiction in the municipal courts to adjudicate every alleged noncriminal traffic-law violation. On November 15, we denied Toledo's motion to dismiss and granted an alternative writ, ordering the parties to present evidence and file briefs in accordance with S.Ct.Prac.R. 12.05. 157 Ohio St.3d 1489, 2019-Ohio-4696, 134 N.E.3d 1199. The parties have submitted stipulations of fact and filed briefs. Ohio Attorney General Dave Yost has submitted an amicus brief urging that this court grant Magsig a writ of prohibition.

## II. Legal analysis

{¶ 6} Three elements are necessary for a writ of prohibition to issue: the exercise of judicial (or quasi-judicial) power, the lack of authority for the exercise of that power, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Elder v. Camplese*, 144 Ohio St.3d 89, 2015-Ohio-3628, 40 N.E.3d 1138, ¶ 13. However, if the absence of jurisdiction is patent and unambiguous, a petitioner need not establish the third prong, the lack of an adequate remedy at law. *State ex rel. Sapp v. Franklin Cty. Court of Appeals*, 118 Ohio St.3d 368, 2008-Ohio-2637, 889 N.E.2d 500, ¶ 15. "When a court patently and unambiguously lacks jurisdiction to consider a matter, a writ of prohibition will issue to prevent assumption of jurisdiction regardless of whether the lower court has ruled on the question of its jurisdiction." *Dept. of Adm. Servs., Office of Collective Bargaining v. State Emp. Relations Bd.*, 54 Ohio St.3d 48, 562 N.E.2d 125 (1990), syllabus.

{¶ 7} Toledo does not dispute that its hearing officer will be exercising quasi-judicial authority. Quasi-judicial power refers to "the power to hear and determine controversies between the public and individuals that require a hearing resembling a judicial trial." *State ex rel. Wright v. Ohio Bur. of Motor Vehicles*, 87 Ohio St.3d 184, 186, 718 N.E.2d 908 (1999). Magsig contends that the hearing officer patently and unambiguously lacks jurisdiction. We agree and conclude that Toledo's patent and unambiguous lack of jurisdiction to carry out its red-light and

speeding-camera civil-enforcement system is clear on the face of R.C. 1901.20(A)(1).

{¶ 8} R.C. 1901.20(A)(1), as amended by H.B. 62, provides that a municipal court "has jurisdiction over the violation of any ordinance of any municipal corporation within its territory, including *exclusive* jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance." (Emphasis added.) The express language of the statute confers exclusive jurisdiction on the municipal courts to adjudicate civil actions for a municipal traffic-law violation. Toledo's ordinance allowing an administrative-hearing officer to adjudicate noncriminal traffic-law violations contravenes the statute's plain language.

{¶ 9} In opposing the writ, Toledo makes three arguments, which we address below.

### A. *This court's decision in* Walker v. Toledo

{¶ 10} First, Toledo argues that this court has already ruled in *Walker v. Toledo*, 143 Ohio St.3d 420, 2014-Ohio-5461, 39 N.E.3d 474, that R.C. 1901.20 contains no language barring Toledo from implementing its own civil administrative-enforcement system under its home-rule authority. But our holding in *Walker* was made in the context of a different statutory scheme and is no longer applicable.

{¶ 11} The version of R.C. 1901.20(A)(1) that was in effect at the time of our *Walker* decision did not give municipal courts *exclusive* jurisdiction over cases involving traffic-camera citations. *Id.* at ¶ 1-3. The previous version of R.C. 1901.20(A)(1) stated: "The municipal court has jurisdiction of the violation of any ordinance of any municipal corporation within its territory * * *." Am.Sub.S.B. No. 98, 147 Ohio Laws, Part IV, 7357. We held that "any" did not mean the same thing as "exclusive," and that the statute could therefore not be read as conferring exclusive jurisdiction over civil traffic-law violations on municipal

4

courts. *Id.* at ¶ 25. But as amended by H.B. 62 in 2019, R.C. 1901.20(A)(1) now states that municipal courts have "*exclusive* jurisdiction over every civil action concerning a violation of a state traffic law or a municipal traffic ordinance." (Emphasis added). The current version of R.C. 1901.20(A)(1) clearly and unambiguously reserves for municipal courts exclusive authority to adjudicate every civil traffic-law violation. And that statutory grant of jurisdiction "cannot be impaired or restricted by any municipal charter or ordinance provision." *Cupps v. Toledo*, 170 Ohio St. 144, 151, 163 N.E.2d 384 (1959).

### B. Preemption under R.C. 1901.20(A)(1)

{¶ 12} Alternatively, Toledo argues that R.C. 1901.20(A)(1) does not preempt its administrative scheme. Rather, Toledo contends that R.C. 1901.20(A)(1) divests jurisdiction only from other *courts*, not from administrative bodies. In other words, despite the language in the amended statute, Toledo suggests that the jurisdiction of the municipal courts is not truly exclusive. According to Toledo, the language that the General Assembly added "can be read to mean 'jurisdiction to the exclusion of any other court' " but not to the exclusion of a municipal administrative body.

{¶ 13} Toledo's argument runs counter to the plain language of the statute, which vests the municipal courts with *exclusive jurisdiction*, without limitations. Toledo's preferred construction of the statute requires us to add words to the text, which we are not permitted to do. *In re Adoption of P.L.H.*, 151 Ohio St.3d 554, 2017-Ohio-5824, 91 N.E.3d 698, ¶ 27.

{¶ 14} We reject Toledo's argument that H.B. 62 preserved the jurisdiction of local administrative-hearing officers for noncriminal traffic-law violations.

### C. Constitutionality of certain provisions enacted in H.B. 62

{¶ 15} Finally, Toledo argues that R.C. 1901.20(A) is unenforceable because other provisions enacted in H.B. 62 are unconstitutional. Toledo points to R.C. 4511.096(C) and (D), which require a municipality to file specific documents

in municipal court in photo-enforcement cases. And Toledo contends that these—and other similar statutes that purport to set rules for a municipal court's operation—violate the separation-of-powers doctrine and Article IV, Section 5(B) of the Ohio Constitution, the Modern Courts Amendment of 1968.

{¶ 16} But even assuming these provisions are unconstitutional (a question we emphatically do not decide), Toledo does not claim that the exclusive-jurisdiction clause of R.C. 1901.20(A) itself violates the Constitution. To the contrary, the authority of the General Assembly to set the jurisdiction of the municipal courts is undisputed.

{¶ 17} Toledo's constitutional challenge to unrelated amendments that H.B. 62 made to other statutes fails to account for the authority of courts to sever unconstitutional portions of a statute without affecting other portions of the statute or related provisions. *See State v. Romage*, 138 Ohio St.3d 390, 2014-Ohio-783, 7 N.E.3d 1156, ¶ 15; *Geiger v. Geiger*, 117 Ohio St. 451, 466, 160 N.E. 28 (1927); *see also* R.C. 1.50.

{¶ 18} To determine whether severance is appropriate, we consider (1) whether the constitutional and unconstitutional parts are capable of standing alone, (2) whether the unconstitutional part is so connected with the whole as to make it impossible to give effect to the apparent intention of the legislature if we strike it, and (3) whether we must insert words in order to effectuate the remaining constitutional portion. *Romage* at ¶ 15; *see also Geiger* at 466.

{¶ 19} The disputed provisions are easily severable (if necessary). The statutory provision making the municipal court's jurisdiction exclusive may still be enforced even if (hypothetically) the specific requirements for conducting those hearings would eventually be declared to be unconstitutional. For this reason, Toledo's constitutional challenge to portions of H.B. 62 is of no consequence to this case.

### III. Conclusion

**{¶ 20}** R.C. 1901.20(A)(1) expressly vests exclusive jurisdiction over noncriminal traffic-law adjudications in the municipal courts. Toledo therefore has no jurisdiction to conduct its own quasi-judicial proceedings. We therefore grant a writ of prohibition.

Writ granted.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Mayle, L.L.C., Andrew R. Mayle, and Ronald J. Mayle, for relator.

Dale R. Emch, Toledo Law Director, Jeffrey B. Charles, Chief of Litigation, and John T. Madigan, Senior Attorney, for respondent.

Dave Yost, Attorney General, Benjamin M. Flowers, State Solicitor, Stephen P. Carney, Deputy Solicitor, and Halli Brownfield Watson, Assistant Attorney General, urging granting of the writ of prohibition for amicus curiae, Ohio Attorney General Dave Yost.

_____